**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

─────────────────────────────── x

JAENEAN LIGON, et al., :
:
                 Plaintiffs-Appellees, :
:  Docket No. 13-3123
             - against - :
:
CITY OF NEW YORK, et al., :
:
              Defendant-Appellant. :

─────────────────────────────── x


**MEMORANDUM OF LAW OF**
**THE PATROLMEN'S BENEVOLENT ASSOCIATION,**
**THE DETECTIVES ENDOWMENT ASSOCIATION,**
**THE LIEUTENANTS BENEVOLENT ASSOCIATION, AND**
**THE CAPTAINS' ENDOWMENT ASSOCIATION**
<u>**IN SUPPORT OF MOTION TO INTERVENE**</u>



DECHERT LLP

Steven A. Engel
Edward A. McDonald
James M. McGuire
Elisa T. Wiygul
1095 Avenue of the Americas
New York, New York  10036
T: (212) 698-3693
F: (212) 698-3599
steven.engel@dechert.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, the Patrolmen's Benevolent Association of the City of New York, Inc., the Detectives Endowment Association, Police Department, City of New York, Inc., the Lieutenants Benevolent Association of the City of New York, Inc., and the Captains' Endowment Association of New York hereby state that they are non-stock, non-profit corporations and, therefore, there are no parent corporations or publicly held corporations that own their stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................. 1

BACKGROUND ................................................................................ 3

    Procedural History ..................................................................... 6

ARGUMENT ................................................................................... 8

    POINT I:
    INTERVENTION BEFORE THIS COURT IS APPROPRIATE AND
    NECESSARY ................................................................................ 8

    POINT II:
    THE POLICE INTERVENORS SATISFY THE STANDARD FOR
    INTERVENTION ......................................................................... 10

    A.  The Police Intervenors May Intervene as of Right Under Federal
         Rule of Civil Procedure 24(a) ................................................ 11

        1.  This Motion Is Timely ..................................................... 11

        2.  The Police Intervenors Have Direct, Protectable Interests in
            This Action ................................................................. 14

        3.  The Police Intervenors' Interests Could Be Impaired by the
            Disposition of This Action ............................................... 17

        4.  The Police Intervenors' Interests Will Not Be Adequately
            Protected by the Parties to This Action .............................. 17

    B.  Alternatively, the Police Intervenors Should Be Granted Permissive
         Intervention ..................................................................... 19

    CONCLUSION ............................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Alstom Caribe, Inc. v. George P. Reintjes Co.*,
  484 F.3d 106 (1st Cir. 2007)...................................................................8

*Atkins v. State Bd. of Educ.*,
  418 F.2d 874 (4th Cir. 1969) .................................................................9

*Bates v. Jones*,
  127 F.3d 870 (9th Cir. 1997) ...........................................................8, 11

*Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*,
  19 F.3d 992 (5th Cir. 1994) ..................................................................14

*CBS, Inc. v. Snyder*,
  798 F. Supp. 1019 (S.D.N.Y. 1992) ....................................................16

*Cook v. Bates*,
  92 F.R.D. 119 (S.D.N.Y. 1981) ...........................................................12

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ...................................................................11

*Dow Jones & Co., Inc. v. U.S. Dep't of Justice*,
  161 F.R.D. 247 (S.D.N.Y. 1995).........................................................13

*Drywall Tapers & Pointers of Greater N.Y. v. Nastasi & Assocs.*,
  488 F.3d 88 (2d Cir. 2007) ...........................................................2, 8, 9

*E.E.O.C. v. A.T. & T. Co.*,
  506 F.2d 735 (3d Cir. 1974) ...........................................................16, 17

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) .......................................................11, 12, 13

*Floyd v. City of New York*,
  --- F. Supp. 2d ----, 08 Civ. 1034,
  2013 WL 4046209 (S.D.N.Y. Aug. 12, 2013)..................................6, 14

*Floyd v. City of New York*,
   --- F. Supp. 2d ----, Nos. 08 Civ, 1034, 12 Civ. 2274,
   2013 WL 4046217 (S.D.N.Y. Aug. 12, 2013)...............................................5, 6, 7

*Goodman v. Heublein, Inc.*,
   682 F.2d 44 (2d Cir. 1982) ...............................................................................8, 9

*Hodgson v. United Mine Workers*,
   473 F.2d 118 (D.C. Cir. 1972).............................................................................12

*Hurd v. Ill. Bell Tel. Co.*,
   234 F.2d 942 (7th Cir. 1956) ...............................................................................9

*In re Holocaust Victim Assets Litig.*,
   225 F.3d 191 (2d Cir. 2000) .......................................................................... 11-12

*Int'l Union Auto., Aerospace & Agric. Implement*
   *Workers of Am. v. Scofield*,
   382 U.S. 205 (1965).................................................................................... 10-11

*N.Y. Pub. Interest Research Grp. v. Regents*,
   516 F.2d 350 (2d Cir. 1975) ...............................................................................18

*Natural Res. Def. Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977).............................................................................18

*Stallworth v. Monsanto Co.*,
   558 F.2d 257 (5th Cir. 1977) ...............................................................................16

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972).............................................................................................18

*U.S. Postal Serv. v. Brennan*,
   579 F.2d 188 (2d Cir. 1978) ...............................................................................19

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385 (1977).....................................................................................12, 13

*United States v. Bursey*,
   515 F.2d 1228 (5th Cir. 1975) .........................................................................8, 11

*United States v. City of Detroit*,
   712 F.3d 925 (6th Cir. 2013) ...............................................................................12

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ......................................................................*passim*

*United States v. City of Portland*,
  No. 12-cv-02665 (D. Or. Feb. 19, 2013) ......................................................11, 15

*Vulcan Soc. of Westchester County, Inc. v. Fire Dept. of White Plains*,
  79 F.R.D. 437 (S.D.N.Y. 1978) ..........................................................................18

*W.R. Grace & Co. v. Local Union 759*,
  461 U.S. 757 (1983)..............................................................................................15

*Watertown v. N.Y.S. Pub. Emp. Relations Bd.*,
  95 N.Y.2d 73 (2000) .............................................................................................16

STATUTES & RULES

N.Y.C. Admin. Code § 12-306 ....................................................................................5

N.Y.C. Admin. Code § 12-307 ....................................................................................4

N.Y. Gen. Mun. Law § 50-k .......................................................................................5

Fed. R. Civ. P. 24 ......................................................................................................19

ADMINISTRATIVE DECISIONS

*City of New York*,
  40 PERB ¶ 3017, Case No. DR-119 (PERB Aug. 29, 2007) ...............................6

*City of New York v. Uniformed Firefighters Ass'n*,
  Decision No. B-43-86, 37 OCB 43 (BCB 1986) ..................................................5

*Uniformed Firefighters Ass'n v. City of New York*,
  Decision No. B-20-92, 49 OCB 20 (BCB 1992) ..................................................5

OTHER AUTHORITIES

Michael Howard Saul & Sean Gardiner, *Stop-and-Frisk Fallout: Bloomberg
  Basks in Ruling, but Tactic Still Faces Changes If de Blasio Wins*, Wall
  Street Journal, Nov. 1, 2013 ................................................................................8

Kate Taylor & Joseph Goldstein, *Despite Stance, de Blasio, if Elected,
  Could Find a Police Monitor Intrusive*, N.Y. Times, Nov. 2, 2013, at
  A18......................................................................................................................8

Pursuant to Federal Rule of Appellate Procedure 27, the Patrolmen's Benevolent Association of the City of New York, Inc. ("PBA"), the Detectives Endowment Association, Police Department, City of New York, Inc. ("DEA"), the Lieutenants Benevolent Association of the City of New York, Inc. ("LBA"), and the Captains' Endowment Association of New York, Inc. ("CEA," and collectively, the "Police Intervenors") respectfully submit this memorandum in support of their motion to intervene in this matter as appellants. The City consents to the motion. Plaintiffs-Appellees oppose.

## INTRODUCTION

This appeal concerns two sweeping district court opinions that, if left undisturbed, would unfairly taint the integrity of the 35,000 members of the New York City Police Department ("NYPD") and would re-write the rules governing how they conduct themselves on a day-to-day basis. The Police Intervenors represent more than 29,000 of the 35,000 members of the NYPD, including the officers, detectives, lieutenants, and captains. These are the officers whose conduct was placed directly at issue in the decisions now under review and whose activities would be directly affected by the now-stayed remedial order.

Under established law, the Police Intervenors have a right to intervene because they "have a protectable interest in the merits" ruling where plaintiffs seek

"injunctive relief against [their] member officers and raise[d] factual allegations that [their] member officers committed unconstitutional acts in the line of duty." *United States v. City of Los Angeles*, 288 F.3d 391, 399 (9th Cir. 2002). The Unions also have a protectable interest in the remedial order, which would set the rules for their day-to-day activities and abridge their "state-law rights to negotiate about the terms and conditions of [their] members' employment." *Id.* at 400.

For these reasons, the Police Intervenors moved to intervene in the district court promptly after the rulings below. They did so consistent with this Court's guidance that "normally," it will "be the better practice" for the district court to consider a motion to intervene first. *Drywall Tapers & Pointers of Greater N.Y. v. Nastasi & Assocs.*, 488 F.3d 88, 94 (2d Cir. 2007). This Court's October 31, 2013 order, however, bars the district court from ruling on the motion. Dkt. Nos. 244-47 (*Floyd*), 171-74 (*Ligon*). Accordingly, to participate in the pending appeal, the Police Intervenors move directly in this Court.

The Police Intervenors seek to participate in the appeal because the decisions below are fundamentally unsound. The district court found system-wide violations where there were none and ordered a remedy that would place the NYPD under the control of a federal district judge through an overbroad and complex remedial process. In granting the stay pending appeal, this Court found that the district judge violated the canon of judicial ethics by demonstrating an appearance of

2

partiality in connection with the case.  *Id.*  The same considerations that required the district judge's disqualification provide yet another reason why the decisions below, which rested upon her factual findings, should not stand.

The Police Intervenors also seek to intervene to ensure that the Court may review the decision on the merits.  On November 5, 2013, the Public Advocate, Bill de Blasio, was elected to be the next Mayor of the City.  Mr. de Blasio has previously expressed support for the decision below and, indeed, filed papers opposing the stay granted by this Court.  The Police Intervenors thus move to intervene for the purposes of vindicating their own rights and ensuring that the district court's flawed injunction will be reviewed on the merits, and will not saddle the NYPD and its members for years to come.

## **BACKGROUND**

The Police Intervenors collectively represent 29,000 of the 35,000 members of the NYPD.  *See* Declaration of Joseph Alejandro ("Alejandro Decl.") ¶ 6, Declaration of Steven A. Engel ("Engel Decl."), Ex. A.  Their members stand at the front line of police services in the City.  Members perform the core executive branch function of enforcing state and New York City laws and thereby ensuring public safety.  *Id.* ¶ 12.  They perform field police work, including patrolling, conducting surveillance, and engaging in the stop, question and frisk procedures at

issue in this action.  *Id.* ¶ 14.  Members also supervise other officers, including their performance of the challenged practices.  *Id.* ¶ 13.

The PBA is the designated collective bargaining agent for the more than 22,000 police officers employed by the NYPD.  The PBA negotiates on Police Officers' behalf with the City on matters of policy, terms and conditions of employment, and all matters relating to the Officers' general welfare.  *Id.* ¶ 7.  The DEA is the exclusive bargaining representative for the approximately 5,000 NYPD Detectives.  *Id.* ¶ 8.  The LBA is the exclusive bargaining representative for the approximately 1,700 NYPD Lieutenants.  *Id.* ¶ 9.  The CEA is the exclusive bargaining representative for the approximately 730 employees of the NYPD with titles including Captain, Captain detailed as Deputy Inspector, Inspector and Deputy Chief.  *Id.* ¶ 10.  The mission of the Unions is to protect the interests of their respective NYPD members.  *Id.* ¶ 11.

Under the New York City Collective Bargaining Law ("NYCCBL"), the City must negotiate with the Unions regarding all matters within the scope of collective bargaining, such as wages, hours, and working conditions, including "the practical impact that decisions on [certain matters of policy] have on terms and conditions of employment, including, but not limited to, questions of workload, staffing and employee safety."  N.Y.C. Admin. Code § 12-307(6)b.

The Remedies Opinion would impair the Police Intervenors' rights under the City's Administrative Code, which makes it an improper practice for a public employer or its agents to "refuse to bargain collectively in good faith on matters within the scope of collective bargaining" with certified public employees unions and "to unilaterally make any change as to any mandatory subject of collective bargaining or as to any term and condition of employment established in prior contract." N.Y.C. Admin. Code § 12-306(4), (5).

The Remedies Opinion would modify mandatory police training practices, which are a subject of bargaining to the extent the City requires them as a qualification for continued employment. *See Uniformed Firefighters Ass'n v. City of New York*, Decision No. B-20-92, 49 OCB 20, at 8 (BCB 1992); *City of New York v. Uniformed Firefighters Ass'n*, Decision No. B-43-86, 37 OCB 43, at 15 (BCB 1986). The decisions of the Monitor would "inevitably touch on issues of training, supervision, monitoring, and discipline." *Floyd v. City of New York*, --- F. Supp. 2d ----, Nos. 08 Civ, 1034, 12 Civ. 2274, 2013 WL 4046217, at *4 (S.D.N.Y. Aug. 12, 2013) (hereinafter "*Remedies Op.*"). Additionally, the New York General Municipal Code provides certain protections for officers that are sued. *See* N.Y. Gen. Mun. Law § 50-k (McKinney). The Police Intervenors have an interest in ensuring that those interests are protected and not diluted.

5

The Remedies Opinion would require many officers to wear body cameras while on patrol. These body cameras would record every act and utterance of police officers, supervisors and citizens, and are not standard equipment. The New York Public Employment Relations Board, which has jurisdiction over NYPD scope of bargaining petitions, has also found that the City's general right to choose technology and equipment may be outweighed by interests such as officer safety, privacy, and discipline that are implicated by the remedy. *See, e.g.*, *City of New York*, 40 PERB ¶ 3017, Case No. DR-119 (PERB Aug. 29, 2007).

## Procedural History

On August 12, 2013, following a bench trial in *Floyd*, the district court found the City liable for violating plaintiffs' constitutional rights and issued an injunction directed at modifying the NYPD's policies, training, supervision, and discipline when it comes to stop, question and frisk. *Floyd v. City of New York*, --- F. Supp. 2d ----, No. 08 Civ. 1034, 2013 WL 4046209 (S.D.N.Y. Aug. 12, 2013) (hereinafter "*Liability Op.*"); *Remedies Op.*, 2013 WL 4046217. The Liability Opinion declared that over an eight-year period, NYPD officers had made "*at least* 200,000 stops . . . without reasonable suspicion*," and that "blacks are likely targeted for stops based on a lesser degree of objectively founded suspicion than whites." *Liability Op.*, 2013 WL 4046209, at *4, *5. The Remedies Opinion declared that in view of these allegedly pervasive practices, it was necessary to

6

appoint a Monitor to oversee the implementation of reforms. *Remedies Op.*, 2013 WL 4046217, at \*3-\*6. Later orders installed a Facilitator and an Academic Advisory Council. S.D.N.Y. Dkt. Nos. 384, 403 (*Floyd*), 128, 144 (*Ligon*).

The Police Intervenors moved promptly to intervene in the district court for the purpose of participating in remedial proceedings and on appeal. S.D.N.Y. Dkt. Nos. 390 (*Floyd*), 133 (*Ligon*). Pursuant to a scheduling order of the district court, the motion was fully submitted as of October 25, 2013. S.D.N.Y. Dkt. Nos. 401, 415 (*Floyd*), 140, 155 (*Ligon*). Meanwhile, the City moved to stay proceedings pending appeal. The Police Intervenors filed an *amicus curiae* brief in support of that motion, and participated in oral argument before this Court.[1] On October 31, 2013, this Court "stay[ed] all proceedings" pending "further action by the Court of Appeals on the merits of the ongoing appeals," with the exception of ordering the district court to re-assign these cases to a different district judge. Dkt. Nos. 244-47 (*Floyd*), 171-74 (*Ligon*). Accordingly, the district court cannot act on the motion to intervene until after the appeal.

On November 5, 2013, Mr. de Blasio was elected Mayor of the City of New York. Mr. de Blasio has repeatedly stated that, if elected, he would order the City

---

[1]     In the *amicus curiae* brief, the Police Intervenors noted that they had moved to intervene in the district court for purposes of the City's appeal. *See* Dkt. Nos. 107 (*Floyd*), 103 (*Ligon*).

to drop the present appeal.[2]  Mr. de Blasio also filed papers in the district court and this Court opposing the City's effort to seek a stay pending appeal.  Dkt. No. 175 (*Floyd*); S.D.N.Y. Dkt. Nos. 386 (*Floyd*), 131 (*Ligon*).

<u>**ARGUMENT**</u>

**POINT I**

**INTERVENTION BEFORE THIS COURT IS
<u>APPROPRIATE AND NECESSARY</u>**

This Court has the authority to grant a motion to intervene in a pending appeal.  *See Drywall Tapers*, 488 F.3d at 94 (recognizing "authority for granting a motion to intervene in the Court of Appeals").  In *Goodman v. Heublein, Inc.*, 682 F.2d 44, 47 (2d Cir. 1982), this Court permitted intervention by the former counsel of the appellee, whom the Court found to have an independent interest in defending an attorney's fee award challenged on appeal.  Numerous other courts likewise have exercised their "discretion to permit intervenors at the appellate level."  *Alstom Caribe, Inc. v. George P. Reintjes Co.*, 484 F.3d 106, 111 (1st Cir. 2007) (internal quotation omitted); *see also Bates v. Jones*, 127 F.3d 870, 873 (9th Cir. 1997); *United States v. Bursey*, 515 F.2d 1228, 1238 n.24 (5th Cir. 1975);

---

[2]     *See, e.g.*, Kate Taylor & Joseph Goldstein, *Despite Stance, de Blasio, if Elected, Could Find a Police Monitor Intrusive*, N.Y. Times, Nov. 2, 2013, at A18; Michael Howard Saul & Sean Gardiner, *Stop-and-Frisk Fallout: Bloomberg Basks in Ruling, but Tactic Still Faces Changes If de Blasio Wins*, Wall Street Journal, Nov. 1, 2013.

*Atkins v. State Bd. of Educ.*, 418 F.2d 874, 876 (4th Cir. 1969) (per curiam); *Hurd v. Ill. Bell Tel. Co.*, 234 F.2d 942, 944 (7th Cir. 1956).

In *Drywall Tapers*, this Court recognized that "it will normally be the better practice" for an applicant to intervene first in the district court. *Drywall Tapers*, 488 F.3d at 94. This is because district courts ordinarily will have a greater familiarity with the matter, and this Court either may hear the successful intervenor's appeal on the merits or review the denial of intervention. Consistent with *Drywall Tapers*, the Police Intervenors moved to intervene below promptly after the rulings under review.

Under the unusual circumstances of this case, it is both appropriate and efficient for this Court now to determine the motion to intervene. First, in the current posture, intervention directly in this Court is necessary. Absent action by this Court, the Police Intervenors could not intervene on this appeal, since the district court will not rule on the motion until the appeal is resolved. Second, "permitting intervention here will minimize piecemeal litigation." *Goodman*, 682 F.2d at 47. If the City dismisses this appeal before it is completed, then the case would return to the district court for a determination of the Unions' pending motion and, presumably, for a renewed appeal. It would plainly be more efficient for the Police Intervenors to be permitted to participate in this pending appeal, rather than to commence a new one at some later date.

9

Third, because these matters have been re-assigned to a new district judge, the district court has less familiarity with the case than this Court, which has already reviewed the lower court opinions, received substantial briefing on the City's motion for a stay, and heard nearly three hours of oral argument.

Finally, in the absence of intervention, the district court's erroneous rulings might go unreviewed because of Mr. di Blasio's pledge to dismiss the appeal. A strong public interest supports having this Court review a ruling that burdens the NYPD and its 35,000 members with very serious findings of unconstitutional conduct, and that mandates their supervision by judicial officers under a complex process that could last years. The members of the NYPD have *not* been engaging in pervasive violations of the Fourth and Fourteenth Amendment. The Police Intervenors, as well as the public, have an interest in ensuring that the demonstrably erroneous findings of the district judge do not go unreviewed. Accordingly, the Police Intervenors should be permitted to intervene and to participate in the pending appeal, under the briefing schedule set by this Court.

## POINT II

### THE POLICE INTERVENORS
### SATISFY THE STANDARD FOR INTERVENTION

The Courts of Appeals borrow from Federal Rule of Civil Procedure 24 in determining motions to intervene on appeal. *See, e.g.*, *Int'l Union Auto.,*

10

*Aerospace & Agric. Implement Workers of Am. v. Scofield*, 382 U.S. 205, 217 n.10 (1965) ("The Federal Rules of Civil Procedure, of course, apply only in the federal district courts.  Still, the policies underlying intervention may be applicable in appellate courts."); *Bates*, 127 F.3d at 873 (applying the standards under Rule 24); *Bursey*, 515 F.2d at 1238 n.24 (same).

### A.    The Police Intervenors May Intervene as of Right Under Federal Rule of Civil Procedure 24(a)

The Police Intervenors have a right to intervene under Rule 24(a).  To intervene as of right, an applicant must demonstrate that (1) the motion is timely, (2) the applicant has a legal interest in the subject matter of the litigation, (3) that interest may be impaired by the outcome of the litigation, and (4) the applicant's interest may not be adequately represented by the existing parties.  *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001).

The Police Intervenors readily satisfy all four elements.  Indeed, numerous courts have permitted police unions to intervene in civil rights litigation, such as this case, that touches upon the interests of their members.  *See, e.g.*, *City of Los Angeles*, 288 F.3d at 398; *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996); *United States v. City of Portland*, No. 12-cv-02665 (D. Or. Feb. 19, 2013).

### 1.    This Motion Is Timely

Under Rule 24, the timeliness of the motion is determined by the totality of the circumstances.  *See In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d

Cir. 2000). The Court may consider how long the applicant had notice of its interest and the prejudice that would be imposed on the existing parties and the applicant from the grant or denial of the application. *Id.* The timeliness requirement is liberally construed. *See, e.g.*, *City of Los Angeles*, 288 F.3d at 398; *Cook v. Bates*, 92 F.R.D. 119, 122 (S.D.N.Y. 1981) ("In the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention.").

Where the applicant seeks to intervene for the purpose of appeal, "[t]he critical inquiry . . . is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977) (a motion to intervene for purposes of appeal would be timely if filed within 30 days of the judgment). Thus, courts "often permit intervention even after final judgment, for the limited purpose of appeal, or to participate in future remedial proceedings." *United States v. City of Detroit*, 712 F.3d 925, 931 (6th Cir. 2013) (permitting a union to intervene as to future remedial proceedings in an environmental case that had been pending for 30 years); *see also Edwards*, 78 F.3d at 1000 (permitting police unions to intervene prospectively in a civil rights case, where the motions to intervene were filed 37 and 47 days after the publication of a consent decree); *Hodgson v. United Mine Workers*, 473 F.2d 118, 129 (D.C. Cir. 1972) (permitting intervention "in the remedial, and if necessary the appellate, phases of [a] case" that had been pending for seven years).

12

Courts also have recognized that a motion is timely when measured "from the time [prospective intervenors] became aware that [their] interest would no longer be protected by the existing parties to the lawsuit." *Edwards*, 78 F.3d at 1000; *see also United Airlines*, 432 U.S. at 394 ("[A]s soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests."); *Dow Jones & Co., Inc. v. U.S. Dep't of Justice*, 161 F.R.D. 247, 252-53 (S.D.N.Y. 1995) (Sotomayor, J.) (finding intervention timely because movant intervened only after "she realize[d] that the [defendant] might not fully exercise its right to appeal").

Under these standards, the Police Intervenors' motion is unquestionably timely. The original motion was filed within 30 days of the district court's decisions, and this motion comes within one week of the Court's order staying the proceedings below. In addition, the Police Intervenors have filed this motion within two days of the election of Mr. de Blasio, who has avowed his intention to dismiss this appeal in January 2014.

Finally, granting this motion will cause no prejudice to the existing parties. The Police Intervenors seek to participate only in the pending appeals (and in any future proceedings on remand), and they stand ready to proceed on the schedule set by this Court's October 31 Order. Far from burdening any of the parties, their

13

participation now will ensure full consideration at the appellate level of the district

court's ruling, and the avoidance of piecemeal litigation on these matters.

### 2. The Police Intervenors Have Direct, Protectable Interests in This Action

The Police Intervenors have a direct interest in this appeal.  A police union

has a "protectable interest in the merits phase of the litigation" where plaintiffs

seek "injunctive relief against its member officers" and allege that officers

"committed unconstitutional acts in the line of duty."  *City of Los Angeles*, 288

F.3d at 399-400.  This interest includes challenging both the district court's

liability findings and the remedies decision, because the validity and breadth of the

latter relies on the former.  *See id.*; *see also Black Fire Fighters Ass'n of Dallas v.*

*City of Dallas, Tex.*, 19 F.3d 992, 994 (5th Cir. 1994) (allowing intervenor fire

fighters' association to challenge underlying issue of municipal liability).

In the decision below, the district court allowed Plaintiffs' expert to opine on

the lawfulness of 4.4 million stops conducted by members of the Police Intervenors

based exclusively on the expert's review of the UF-250 forms.  These forms were

not, and have never been, the sole evidence in support of the constitutionality of a

particular *Terry* step, yet the district court relied upon them to find that the officers

had made "at least 200,000 stops . . . without reasonable suspicion" over an eight-

year period.  *Liability Op.*, 2013 WL 4046209, at *4.   The Police Intervenors

14

plainly have an interest in challenging these erroneous and damaging findings about their members' conduct, findings that have chilled lawful and proactive police conduct, and that would unfairly undermine public confidence in their work. Their members' interests are likewise impaired by the sweeping reforms contemplated by the Remedies Opinion, which directs numerous acts that, in turn, will have a direct impact upon the officers' day-to-day activities.

In addition, the Police Intervenors have an interest in this appeal because a federal court remedial order, when issued pursuant to a liability finding, allows the district court to set employment practices that would otherwise be subject to bargaining under state law.  The Police Intervenors' state law rights may only be abridged "as part of court-ordered relief after a judicial determination of liability." *City of Los Angeles*, 288 F.3d at 400.  The Police Intervenors have "state-law rights to negotiate about the terms and conditions of [their] members' employment . . . and to rely on the [resulting] collective bargaining agreement[s]." *Id.* at 399-400; *see also W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 771 (1983).  If a proposed Remedies Opinion "contains – *or even might contain* – provisions that contradict the terms" of the collective bargaining agreement, the union members have "a protectable interest." *United States v. City of Portland*, No. 12-cv-2265 (D. Or. Feb. 19, 2013), at 7 (emphasis added).

15

Indeed, even when the issue of whether an order touches upon a bargaining right is disputed, a union has the "right to present its views on the subject to the district court and have them fully considered in conjunction with the district court's decision to approve" the ultimate injunction. *City of Los Angeles*, 288 F.3d at 400-01 (allowing intervention despite the argument that the decree's effect on collective bargaining was merely speculative); *see also E.E.O.C. v. A.T. & T. Co.*, 506 F.2d 735, 741-42 (3d Cir. 1974); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 268-69 (5th Cir. 1977); *CBS, Inc. v. Snyder*, 798 F. Supp. 1019, 1023 (S.D.N.Y. 1992), *aff'd*, 989 F.2d 89 (2d Cir. 1993).[3]

Public employers have a duty "to bargain in good faith concerning all terms and conditions of employment." *Watertown v. N.Y.S. Pub. Emp. Relations Bd.*, 95 N.Y.2d 73, 78 (2000). New York's public policy in favor of collective bargaining is "'strong and sweeping.'" *Id.* The Remedies Opinion contemplates the introduction of body cameras for some officers; changes to police training; changes to the UF-250 forms and other mandatory paperwork; and changes to the disciplinary and supervisory processes. These subjects would fall within, or arguably fall within, the collective bargaining process secured to the Police

_____

[3]     The Police Intervenors also have an interest in representing their members' statutory interests and rights in police disciplinary proceedings, the procedures for which may be changed by the ordered remedies.

16

Intervenors under state law.  The Police Intervenors therefore have an interest

granting them the right to intervene under Rule 24(a).

### 3.    The Police Intervenors' Interests Could Be Impaired by the Disposition of This Action

As discussed above, the rules set forth by the Remedies Opinion will affect

the Police Intervenors' members' day-to-day business in ways that are directly and

concretely different from all other non-parties to this litigation.  Accordingly, if the

Police Intervenors are not permitted to intervene, they would be bound in many

ways that would adversely affect them.  The Remedies Opinion envisions a process

in which the NYPD will be ordered to modify its existing policies, training,

discipline, equipment, and supervision.  Those matters will directly affect the

Unions' members in their day-to-day activities and collective bargaining rights.

*See AT & T*, 506 F.2d at 742; *see also City of Los Angeles*, 288 F.3d at 401.

### 4.    The Police Intervenors' Interests Will Not Be Adequately Protected by the Parties to This Action

The recent election raises a serious question as to whether the Police

Intervenors' interests on this appeal will adequately be protected by the City.  Mr.

de Blasio has filed briefs in support of the plaintiffs, has stated that the district

court's order was correctly decided, and has avowed to dismiss the appeal upon

assuming office.  The inadequacy requirement of Rule 24(a) "is satisfied if the

applicant shows that representation of his interest 'may be' inadequate; and the

17

burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also City of Los Angeles*, 288 F.3d at 39. Plainly, there is a likelihood that the City, under the new Mayor, will not adequately represent the Police Intervenors' interests on this appeal.

In addition, with respect to the matters that bear upon collective bargaining, the City's interests are not aligned with those of the Police Intervenors. *See Vulcan Soc. of Westchester County, Inc. v. Fire Dept. of White Plains*, 79 F.R.D. 437, 441 (S.D.N.Y. 1978) ("Although the municipalities involved have the same interest in seeking qualified and efficient fire personnel, it could hardly be said that all the interests of the union applicants are the same as those of the municipalities."). The City acknowledged the same point below in consenting to the Police Intervenors' intervention. S.D.N.Y. Dkt. Nos. 414 (*Floyd*), 152 (*Ligon*).

Finally, the Police Intervenors are uniquely situated to provide their members' views in this appeal. *See Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (granting intervention because "the appellants' interest is more narrow and focu[]sed than EPA's, being concerned primarily with the regulation that affects their industries"); *N.Y. Pub. Interest Research Grp. v. Regents*, 516 F.2d 350, 352 (2d Cir. 1975) ("[T]here is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would the [state authority party]."). The Police Intervenors have a

18

distinct perspective and strong views on many issues raised by the Remedies Opinion. They thus should be allowed to participate formally as party appellants.

### B. Alternatively, the Police Intervenors Should Be Granted Permissive Intervention

In the alternative, the Police Intervenors meet the standard for permissive intervention. Fed. R. Civ. P. 24(b). The threshold requirement for permissive intervention is a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention must not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In addition, courts may consider factors such as whether the putative intervenor will benefit from the application, the nature and extent of its interests, whether its interests are represented by the existing parties, and whether the putative intervenor will contribute to the development of the underlying factual issues. *See, e.g.*, *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978).

For the reasons stated above, the Police Intervenors meet the standard for permissive intervention. The Police Intervenors' conduct is directly at issue in the Liability Order; the Remedies Opinion, if implemented, would directly affect both their day-to-day activities and their collective bargaining rights. The Police

Intervenors' participation would not unduly delay or cause prejudice to any parties in this matter. Accordingly, permissive intervention is appropriate as well.

## CONCLUSION

For all of the above reasons, the Police Intervenors respectfully request that the Court grant its motion to intervene in this appeal.

Dated:          November 7, 2013
                New York, New York

Respectfully submitted,

/s/ Steven A. Engel
Steven A. Engel
Edward A. McDonald
James M. McGuire
Elisa T. Wiygul
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
T: (212) 698-3693
F: (212) 698-3599
steven.engel@dechert.com

*Attorneys for Proposed Intervenors the Patrolmen's Benevolent Association of the City of New York, Inc., the Detectives Endowment Association, Inc., the Lieutenants Benevolent Association of the City of New York, Inc., and the Captains' Endowment Association of New York, Inc.*

15082659

20